Chief Justice Robertson
delivered the opinion of the Court.
This is an action of covenant brought by Charles Hart, against Charles F. Burton, on the following writing: “Borrowed from Charles Hart Senr. $275, for which I have placed in his hands as security, a negro girl: should I not pay said sum of money by the 20th inst. the said girl is to lie the absolute property of said Hart, and I bind myself to give a bill of sale when demanded.
(Signed) C. F. BURTON.” “Feb. 9th, 1827.”
The declaration averred that the slave had died in April, 1827, without the plaintiff’s fault, and charged, as a breach of the covenant, the non-payment of the $275 on the 20th of February, 1827, or since.
The circuit court, being of opinion that covenant could not be maintained, sustained a demurrer to the declaration, and thereupon gave judgment in bar of the action.
In revising the judgment, two questions are presented for consideration: 1st. Does the writing import a conditional sale, or only a pawn or mortgager 2d. If the legal effect of the contract be only a security for the repayment of money loaned, is there any covenant to pay the money on the 20th of February, 1827? These are legal propositions, and therefore must be decided at law, as they should be in equity, according to the actual import of the writing, when tested by the fixed rules of law and reason.
I. We cannot construe the writing to be legal evidence of a conditional sale. The parties, and especially the plaintiff, may have intended that the contract should become a sale on the non-payment of the $275 within the eleven days allowed for the reimbursement of the loan. But as the writing states the consideration to bea loan of money, and shows expressly, that the slave was delivered to the lender. *323 as a collateral security, the contract, according to legal intendment, is a pawn or mortgage. It was certainly so at, and immediately succeeding its pletion; and the maxim, “once a mortgage always mortgage, is as legal as it is equitable, and applies to all collateral securities, as well to mere pledges as to technical mortgages: See Edrington vs. Harper, III. J. J. .VlarshalPs Reports, 353, and Brown vs. Bemont et al. VIIÍ. Johnson, 75.
The right oí redemption " attaches e-~ •rTv'ag'VRmt■ once a nusrt*~ trae, than °‘loe a Pawn * The common law rfiC0Sm^est preventing °r the redemptioh of pawn«r
Y71'01,6 • ¡tern, thi party has a to reithe ether has a ?ue ney Jeatffof a slave,wor(— ^agoii-er— nawnodj. without culpable con-__ duct '*n the part of mort or ph w-' pp¿, flo^s not aiT’ot that riirhf.
*323 It is not material whether this be a mortgage or a pawn. The right of redemption attaches equally to both, and it is as difficult to transmute the one as the other into a sale, by the operation of the original contract. Though anciently at Rome, the ereditor and debtor were permitted, by the lex commis-' soria, to make an agreement at the date of the pledge, whereby it would, on a prescribed contingency, come the absolute property of the pawnee; such a power was not indulged, even at Rome, since the days of Constantine, who abolished the law by which it had been sanctioned. Every agreement for preventing redemption of pawns is proscribed by the common law as emphatically as are similar agreements in mortgages of real estate. Wherefore, whether the contract in this case be deemed a pledge or a mortgage, the same rules of law apply to it,, and produce the same effect. The same contract which made the slave a pledge for money borrowed,' did not, proprio vigore, make her the absolute property of the pawnee or mortgagee. If it were ab origine, a pledge or mortgage, it continued to be so; and whatever may have been the actual intentions of the parties, the deduction of law from the fact of loan and of security, is that the contract wasjnot a sale, but a pledge or mortgage only. #
Burton might surely have redeemed, even after the eleven days; and as he had the right to,-redeem, Hart had correspondent rights, and may maintain a suit for his money without attempting a foreclosure. We cannot admit that, if one party had a right treat the contractas a mortgage, the other shall not have a similar tight; their rights must be equal and reciprocal. The contract is a mortgage or not a mortgage as to both parties. If the contract be *324 considered a mortgage, the death of the slave did not affect the mortgagee’s right to sue for the mone\ loaned. If it be a pledge only, the death did not affect any legal right which otherwise he may -have had to sue for the amount loaned, unless tiie death resulted from his culpable negligence, or was occasioned by liis improper conduct; and the deilaration negatives any such delinquency.
The words ¿•diould I not pny «aid sum oTmorjfty by the _20th inst. in an in«trumen, specif i nVf.fi e sub-sender had cfiTorrowed2^ thb "motley^ constitute an ospreíp oovafíaht toJte-"' fund th a «money.
Any words -which evince aiT agreement •will consti-* tu*e nn express cove-' «atrfrwlieñ - inserted .specialty.
uB^rrowed” imp'oft' nn dbisr'ation to retur*» the thiny borrowed or its vr.ilae*
II. The writing imports a covenant to pay the $275 on the 20th of February, 1827. As the contract was not, according to its legal operation, a sale, a contract to refund the money must be presumed; and we are of opinion thnt sur h a contract is expressed by the writing itself, when properly 'construed. rI here is no covenant, in totidem virbis, •to pay $276 on the 20th of February,. ’27, or at any other time. • But the words, when sensibly and practically interpreted, clearly import a covenant to pay tire money which was loaned. And as language expresses that which is rightly understood by it, the e-fore, if the writing in this case, when properly understood, means that the money wasto he refunded, there is, of course, an express covenant to that effect.
Any words which, literally or constructively, evince an agreement, will amount to an agreement, and will, of course, be an express covenant when inserted in a specialty. Hence a recital (in a deed) of an agreement, will amount to an express covenant, her ause it is an acknowledgement, by deed, of the existence of such agreement. So too, a similar acknowledgement of a sale of land would be deemed .an express covenant to convey the legal title, because the act of sidling carries with it, as a natural and wsual consequence, an obligation to make a title. The principle is plain and its application is easy; we shall, therefore, not exemplify further: See Wheatons Selwyn, 343-4; Ba. Ab. Covt. B; Beal’s adr. vs. Schoal’s exr. I. Marshall, 476.
“BoiTwed” imports necessarily an obligation to return the thing borrowed, if it be loaned for use, or to return its kind and value if it be loaned for consumption. Therefore, according to authority, analogy and reason, as tire word “borrowed” in the *325 writing signed by the defendant, imports nri a-knnwleUgeu.ent by him, that lie liad agreed to menu the amount borrowed, or was under a legal obligation to do so, the writing contains an express covenant to pay it at the time designated, t'o-wit: the 2Udi of February, 1827. "This is to witness that J have borrowed £ÍQfrom C.Dd’ (Signed) A. B., is a covenant to pav the £10. Ba.Ab. Covi. B.
Implied corr* Mtnlsii'h NgitfTnHWnTUUSfToV*T?ofivr-. cal'torn.45, <t> pKoTTTo iv* 1 estate; u u->\>n:inr which words import according to their ordinary sigti'fic.*tton and gram maticaJ u sé, is an ex»* ’jirc^cove-» naiit.
"Dii-seni.
Cunningham, for plaintiff; Harlan, for defendant.
“ í/ipifed” covenants apply only to real estate But there is no analogy bet.weep them and such as this. They are covenants which are not inleried from the words, according to their popular or grammatical import, but are deduced by operation ol law as arbitrary, and merely legal consequences, flowing from certain techuhai terms which do not, of themselves, in their common use, mean what they are thus made to imply; lor example, the law implies a warrrnty from the words “demise and grant,” when used in a lease, though they, m fact, no more import a warranty than “sell and convey” would in a deed, bargain and sale.
A covenant which the words import, when understood according to their common practical or grammatical signification, is not an “implied,” hut is an express covenant. Such is the covenant in this case; for if, as we have decided, the contract was not a conditional sale, the consequence seems not only rational, hut almost inevitable, that it contains a covenant to refund the money which the word “6arrow-ed,” ew vi termini, imports.
Wherefore, it seems to this court, that the circuit court erred in sustaining tiie demurrer to the plaintiff's declaration; and therefore, the judgment is reversed and the cause remanded tor further proceedings consistent with this opinion.